Thank you, Your Honors. Your Honor, I would like to reserve three minutes for rebuttal. Okay. You've got a clock there. I'm going to try to help you monitor that as well. All right. Thank you. Your Honor, I think that this case may be called What Do You Do With a Drunken Sailor? And this age... Okay. This age old... By the way, you're Mr. Bernberg? I am, Your Honor. All right. I just want to make sure. Thank you. Yes. And that song came out hundreds of years ago, long before the case of Lisa M. When sailors are drunk, they're on chard leave. This is a foreseeable incident. But they're still on the clock. They're still under their employment with their employers. The courts have found respondent superior liability for damage to a dock. In the Ira Bushey case, they found liability for a drunken sailor who runs a car into another car or damaged property. There's no reason why that we cannot extend vicarious liability or respondent superior to a drunken sailor who injures somebody. Well, sure there is. There's reason. There may not be persuasive reason, but isn't that behavior very different? I mean, I'm on the clock right now. I work for the United States government. If I pull out a gun and shoot you, is the United States government responsible for that? Probably not, but that's the Beach case. Well, but see, but you're arguing because he's, quote, on the clock, close quote, it's Horizon Line's responsibility. And that's not necessarily so. It goes further than that, Your Honor, because it goes to his state of mind. He was drunk. If you're drunk and doing something, it may not be as intentional as you think, because Mr. Trediak was handing his card, his tuit card, a governmental card, to enter into the ship. He was responding to an in furtherance of the employer's wishes. It was a secured site, and Horizon had a policy against drunken seamen. The Coast Guard has a policy against drunken seamen. This is a longstanding problem by the Coast Guard. Well, most places have a problem against, you know, obstructive, illegal, and other behavior. But then it doesn't necessarily make it foreseeable in the line of his work that he's going to be drunk and then assault somebody. Well, Your Honor, what would be the difference if he damages a piece of property, such as a dry dock, because it's foreseeable, at least in our history of maritime law, that sailors are drunk. We don't have a long history of sailors pulling out guns or bringing them aboard the ship. You're not suggesting, are you, that foreseeability is the only factor you consider when, you know, when determining scope of employment? Well, in determining scope of – that is what – You know, the employer would be foreseeable that when he goes on leave, he's going to go to a restaurant and, you know, eat something, right? Correct. It's foreseeable. So while he's at the restaurant, if he hits somebody over there with a ketchup bottle, is that the employer's fault? Probably not, but he was in further – What's the difference? It's foreseeable. But in this case, he was checking in with a secured guard. The longshoreman is actually acting almost as a borrowed servant of the employer, Horizons, because this is a secured – But the assault had nothing to do with that. He wasn't – the assault wasn't committed as something he was doing for the employer. The employer could have no possible benefit or interest in the assault. That was purely a personal thing. But in this case, it was – he was in the process of checking in, and just like – Assault isn't part of that process, is it? Well, in this case, it started out as you have beautiful eyes, you're, you know, you're beautiful. In other words, it started out as compliments, as informal conversation, and it proceeded. And maybe it was not intentional. Maybe it just was an outgrowth of him being drunk. But in this case, that would be a jury question. Just as in Gozoni, this – courts have decided in Gozoni v. Southwest and in Chandra's, that status of employment of Jones Act seaman, that this is actually a jury question. Well, sure. But summary judgment repeatedly takes up questions of fact, and the issue for the court is could a reasonable jury find in favor of the position being advocated? In this case, the district court concluded that a reasonable jury could not, and granted summary judgment for defendant. What was wrong with that decision? Hard for me to see a reasonable jury reaching the conclusion you're asking us for to reach. Well, given the whole framework, that there's a strong policy against alcoholism, that a jury could – I mean, if Bushy could find that damage to a doc could be done by a drunken seaman further into the employment, I think that a jury could also find that an assault could happen, too. And there's a long history. It's a little hard to see the dividing line between Jones Act cases, but an assault in an intentional act by a Jones Act seaman of another has also been held to have vicarious liability. Right. Well, let me ask you about that because you do make a point in your brief about maritime law or admiralty law versus state law. Right. And what is it in admiralty law that you think, as I understand, you'd prefer to have application of admiralty law, correct? Correct. Well, in admiralty law, in other words, this is not a California state case. This is an admiralty law case. Well, the question is why. Why. Why. The jurisdiction of the court does not end at the waterline. The cases have – the case of the Supreme Court case of Norfolk Southern Railway versus Kirby, a recent railroad case that involved cargo, said that the modern maritime commerce, the shore is now an artificial place to draw a line, and you have several cases such as the Doe versus Celebrity Lines case where the assault took place in a park by a – it was a cruise ship, and by a seaman working on the cruise ship, and they had admiralty jurisdiction. How do you square those cases, which I am familiar with, with the Supreme Court's case of Victory Carriers, where they basically are saying that piers and docks are an extension of land and not part of jurisdiction under the maritime law? Well, I think that under Victory Carriers you have the Admiralty Extension Act, of course, because you were having torts such as Gutierrez versus Waterman where an accident started on a ship and then ended up on the land. Okay? And now courts are allowed to – Those are what I would call kind of a continuing tort. Right. It starts here, but then it ends up over here. But what if it – if everything takes place on an extension of land? Well, you have Admiralty – And not on a ship and not out on navigable waters. Yeah, the seaman came from the ship. Okay, take the case – It was going to the ship. But you haven't really answered my question. If you have a situation where you're not in navigable waters or on navigable waters and you're not even on a ship, but you're on physical land or dock that's an extension of land. Well, you're not even on the dock. Yeah. Right? But if you – how does that – how do you get maritime jurisdiction on that? Well, I think that the law would say that the check-in point was part of the wharf or the finger where he was checking in to board the ship. But you take a case such as Dulef Superior – Say that again? The law would say what? No, that where she was checking in the longshore, checking in the seamen, that is part of the dock or the finger. That's part – So if he checks in at the travel agency downtown because it's not easy. Well, no. But why? I mean, how do you know – maritime law is a fairly circumscribed thing, but what's the difference between checking in downtown with the travel agent and they bus you to the ship? Well, you have to look at the two Supreme Court companion cases, the Ford v. Pfeiffer and the Caputo case, and that's where the longshoremen were loading into a warehouse and then the accident happened in the warehouse. And it's just a question of how remote you are from the wharf or from the water itself. And if you're checking in at a travel agency downtown, you're too remote. There's no relationship. But here, this is the first one. Even if a ship employee is checking you in. Right, even if a ship – You would have a better case, I think, if we were, you know, at the bottom of the gangplank checking in with the first mate to get on board a ship. But this was, you know, way out. He had to take a bus from that check-in point to get to his ship, right? It wasn't a – we call it a shuttle. Yeah, well, a shuttle bus, right? It's not a – you call it a shuttle, but isn't it a bus? You can call it anything you want. But the point is, you know, it's more than a long walk to the ship. Because this is where they put all the containers. You know, they offload the containers, so there's a certain loading area. But it is on the wharf or the dock. It's not just that little thin line. But the jurisdiction extends to the – in those two cases I cited to you, the Ford – I can't give you the site now, but Ford v. Pfeiffer and the Caputo case, I think, northeastern, those cases it extends to the warehouse where they put the cargo. So you take it off the ship, you put the containers or the brake boats up. But this isn't an extension. They're not moving something from a ship to someplace on land. This is somebody who's on land, who's going back to the ship, but the ship is still some distance off there. Right. You're not over water. This is hard land that he's on top of. Well, where does Admiralty come in? Okay, well, what's the distance? The distance is, like, 200 yards. Well, 200 yards is – And that's why Admiralty law makes a distinction. Well, I think there is this case that where the two cars were in an accident. It's called Duluth Superior Court – I mean, Excursions v. McKayla at 623 Fed Second 125. This is an Eighth Circuit case. And the two individuals were drunk. They'd been on a, quote, booze cruise. And they left the ship, and they both got in a car accident. But your guy was going to the ship. I'm not sure that case makes sense to me, but your guy doesn't even fit that pattern. It wasn't something – he didn't get drunk on the ship. Your complaint is he's going back to the ship, and he got drunk on land. So land is what this case is about, not ship. I know, but there's the policy that they know that he's going to get drunk, and they don't do it. So what we need to assume is that because sailors do get drunk from time to time, that therefore we assume when they exit the ship, they go on land, that they're likely to get drunk. And if people get drunk, they do stupid things like this and illegal things. That's pretty speculative. So it basically would make – if I would understand your rule, it would almost be a per se rule that anything the sailor did, the companies liable for, because per se they're likely to get drunk. Why wouldn't – is that the rule that we would? No, it's not a per se rule, but here I – But how do you get – but you make us assume that it's foreseeable that they're going to get drunk because there is a history of drunkenness. Well, there is a history of drunkenness, but he was checking in with his TWIC card, the Transportation Workers, which is an FBI check, and you have – it's a secured area. You can't get past that. So he's in the furtherance of his employer's business, and so how do you distinguish? I hand my card, I give my name, and then he starts to say, your eyes are beautiful, and all of a sudden it goes on beyond that. But she's acting on behalf of the ship, and the ship never checked him for – never gave him an alcohol test. They never even fired him until the union had arbitration. That's after the fact. That's after the fact. Right. But under your theory, if he careens up to the wharf and the officers stop, and, you know, he hits somebody, he's on his way to the ship, and he hits somebody, and he's like right there as he gets to the wharf, maybe even inches past a barrier, and then he flips out his official ID card, that wouldn't be any different than what you're arguing for in terms of liability, would it? No, I think that that's where the liability is established. Even if it's likely, as you say or speculate, that sailors are going to get drunk on – at least some of them are – on shore leave, one, you know, unless you say all sailors are going to do this, there's no way that an employer can differentiate. And furthermore, this was a union hiring hall situation, right? In other words, the employer had to take anybody the sailors' union sent, and, you know, he couldn't screen each one individually for propensity to drink, could he? True, but I don't think that the employer can just rely upon whatever the union sends them. If you watch a two-hour film on diversity – Well, what is the employer supposed to do? Well, the employer needs to instruct their seamen what they have to do that they can't return drunk. I mean, if they're only in port – That's in the policy, isn't it? Yeah. That's in a policy I can have – I mean, I live in San Diego. We have a lot of sailors. Some of them are drunk. Some of them are not drunk. But you can't presume all of them are drunk. No. Well, how do you know the employer didn't do just what you say he should have done? Because we show in the discovery that they didn't do anything. They have it in the break room. They have a book. Right. And who's going to read that book? Or who's going to – they have a sign posted. We have all signs posted that you can't discriminate. But the thing is they don't take any steps to really enforce it. In other words, they don't do anything to investigate or have that type of training. There is no – they didn't do their own background check on this individual. They didn't do a criminal check. They didn't do a litigation check. But that's not how it works. Maybe just correct me if I'm wrong, and then you may want to save some time. But basically, under these union rules, you take who they send you, correct? I mean, if they do something wrong on the job, you can say, you're out of here, potentially, and then you have a whole union issue. But you don't get to say, well, I want that guy and that guy and that guy or woman. And all these issues you're raising now, that's really part of your – I'll call it a would-be negligent hiring claim, right, which you never made? That's what you're talking about now. They were negligent in hiring the guy. But you never made such a claim in your complaint. Yeah, we did. We said that there was negligent supervision, negligent hiring. And the court – we alleged that. And, of course, we didn't know what we were getting into. We don't have to be as specific as in Twombly case. It's not a RICO case. And so we alleged negligent hiring. We alleged negligent supervision. You did, but it's not in your appellate brief, is it? No. We did allege in our appellate brief that there was negligent supervision. We said that we – Well, that's different from negligent hiring. Negligent hiring, we took depositions. They said that they relied – Well, you just said – we said in our brief that there was negligent supervision. But Judge McEwen asked about whether you argued negligent hiring. In your brief? In your brief. We may not have. And the answer is no, right? I would say so. So if you didn't, haven't you abandoned it? Well, that's true. All right. We'll hear from the other side. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. Katherine Essek for the Appellee Horizon Lines, LLC. This is not one of those rare cases under whichever vicarious liability test you use in which the employer can be held liable for an employee's sexual assault. And in the argument just now, there was some allusion to different elements of the two possible tests. The restatement test, which is the motivation-to-serve test, is the predominant maritime law test. And the enterprise risk test, which is used in one maritime case, Bushy, relied on by the appellant, and also in California, is the other possible test to use. Under either test, and the district court applied both of them, the — this Court should affirm, the restatement, the predominant maritime test should really not be too much of a dispute about that. There's no evidence that Trediac had a motivation-to-serve horizon by sexually assaulting Ms. Ferguson. Now, the enterprise risk test, there's some more complex issues in that, which certainly came up during Mr. Bernberg's argument. But still, the Court should affirm, and I'd like to point out that under enterprise risk, vicarious liability for an employee's sexual assault is possible, but it's very rare, and this is not that rare case. What test did the district court use? Both tests. It applied both tests, both the enterprise risk test that was used in Bushy and is used in California, and the restatement test, which is applied in most maritime cases other than Bushy. And you seem to take the position, in your brief, agreeing with the district court, we don't have to decide which law applies. Is that right? Yes. Because there's no liability under either California law or maritime law. Yes, I agree with that. Well, under the enterprise notion, here's how I understand the argument. Number one, he says, well, shore leave is a necessary part of basically being a sailor or working on a ship. So we all would agree with that, right? For him to check in? Well, to check out and then check back in. Okay, yes. You're on the ship, you go off, you get leave, and then you get to come back. Yeah, I understand. So he's there. So we don't disagree with that. But then the second part of his argument, as I understand it, is, well, you've got policies about drunkenness, so you know sailors get drunk, and I think his argument then is historically there's a lot of drinking, therefore you should see drunkenness as a foreseeable part of shore leave. And that's his argument, so I'm just interested to hear your comments. And then he extends it further. When you get drunk, another possibility of what happens when you get drunk is sexual harassment. I think that the California law, which applies enterprise risk, does provide guidance on a lot of those questions, particularly related to assault, sexual assault, combined with the intoxication of the assailant. Bushy doesn't really address a drunken assault. There was no evidence of an assault in that case, although the court in that case did say that he could imagine cases that fall on the other side of the line. For example, if he recognized that the security guard was his wife's lover and shot him, that would be motivated by personal reasons not related to his work. And what I think appellants' arguments do is obscure the motive element. Motive matters in an intentional, in an assault case when it comes to enterprise risk test for vicarious liability. That's very clear not only in Bushy, in the hypothetical that the court gave, but in the California well-developed case law. The motivating emotions for the assault must be fairly attributable to some work-related event or condition. Sotomayor, is maritime law better for you than maritime law? Actually, the predominant maritime law test is an easier question, because, Mr. Trediac, there's no – there's nothing – I don't think anybody could disagree that he's not serving the interests of Horizon by sexually assaulting Ms. Ferguson. Nevertheless, I still think under California law, the only sexual assault case in which the California courts have recognized vicarious liability for sexual assault is Mary M., and that's where a police officer who has unique authority to detain people, to arrest them, if he commits a sexual assault of someone he has detained, that could be a foreseeable risk connected to the conditions of the employment. But they have rejected – I think I've cited 10 different cases in which they've recognized vicarious liability for a sexual assault. And I guess one of the concerns, of course, is that every day, every minute of every employment has the potential for sexual assault, sexual harassment, just by the mere presence of any kind of employee, whether it's male or female or whatever, and if you don't put some limits on it, as you're suggesting, then every sexual assault technically could arise out of an employment and a motive. I agree with that, and I think the cases do address that. What they say is we – vicarious liability cannot be extended so far that it becomes strict liability. And one of the things that can happen in a sexual assault case, the reason why it's so rare that the assault could be attributed to the employer is because it's very rare that the assault would have any connection to any aspect or condition of the employment. And there is a difference between foreseeability in the negligence context, whether it was more or less likely for an event to happen, such as a fight to break out if people become drunk with the tacit acceptance of their employer, and foreseeability in the enterprise risk context, which means is it more or less associated with a condition of employment. And I did cite some cases in the briefing that do involve drunken assaults, and the key in those cases, the reason why Rogers is one of them, Martinez is the other, the reason they come out on different sides, vicarious liability in one and no vicarious liability in the other, is because in one of the cases, Rogers, the dispute which preceded the assault was work-related. In the second case, Martinez, the dispute that preceded the assault was not work-related. It was a dispute about how somebody was treating another person's wife. That's not related to any condition of the employment in that case. All Mr. Trediak was required to do is go up to Ms. Ferguson at the checkpoint, hand her his ID, she would check off his name in a booth and hand it back. There was nothing about that transaction that is, that would have motivated a sexual assault so that you could say that Horizon should be held vicariously liable for it. And on the issue of drunkenness, and Justice McCown alluded to this before, I've actually Just because someone is drunk, you can't say that they become drunk on the job as a condition of their employment and anything that proceeds from that, the employer should be vicariously liable for. There are sexual assaults, rapists who are Do you think it would be different if we have leave and we have drunkenness and we have sexual assault? Do you think it would be different if the drunken, in terms of foreseeability or being part of the enterprise, if the drunkenness led to a vehicle accident as opposed to a sexual assault? I think there would have to be evidence, and there is none in this case, and there would have to be evidence that the drunkenness was a condition of employment, such as in the at the employment site, which was a Navy base, there was evidence that that was a condition of employment. So when he got into his car and he drove off and he hurt somebody in a drunk driving accident, that could be considered a risk of the enterprise that the company or the Navy should bear. There's no evidence like that in this case, and I do think, and Lisa M. points this out, just in an assault case, motivation really matters. I think that the appellant strives in the briefing and in the arguments to analogize the assault, the facts of the assault, to a drunk driving car accident. Mr. Trediak did not just go up and stumble against her and injure her. He made an intentional assault and battery. In fact, those were her claims in the complaint, assault, battery, false imprisonment. And that's the evidence that was presented to the court. And there was nothing about those events or the evidence about the conditions of his employment that indicates Horizon should be held vicariously liable for it just because there's nothing about that that's a part of its enterprise. Well, then we come back to Bushey, which sits out by itself in some respects, but it's by Judge Friendly, so we pay particular attention to it. And in that case, what the drunken sailor did wasn't, he's making his way back to the ship and he decides to turn some valves. Next thing you know, the place gets flooded. And the opinion is explicit in saying there's not, that's not something he was doing for the benefit of his employer or the employer's enterprise. It's just something he did. How is this different? The difference is that this is an intentional assault. And Bushey actually, Judge Friendly had a hypothetical in there where he talked about if the seaman had come back and recognized the security guard and his wife, Lutter, and shot her, that would proceed from, I think it was called a domestic matter, nothing related to the employment. But he was willing to recognize vicarious liability for the turning of the valves, which is something that a seaman does as opposed to a sexual assault, which Horizon is definitely not in the business of that. So that is the distinction. Bushey, in my mind, it's an older case, but it does fit in with a lot of the California cases. It's cited throughout California law. It itself relies on California law. It's another enterprise risk test. But I do think that the focus for the Court should be on the assault cases more than the drunk driving cases, the intentional torts, because motivation in enterprise risk is not irrelevant, especially not in an assault case. And I think that that should not be obscured in making this decision. Okay. Okay. Thank you. Thank you. You used up your time, but you need a little time for rebuttal, so if you wouldn't mind putting a minute back on the clock. A minute. Thank you. I'll be brief. First, I want to address the bus issue a little bit. The reason why they take a shuttle is for safety reasons, even if it's a short period, because you have top picks, side picks, and these large containers going around. People get injured with all the movement of the containers, so that's the reason why they take a shuttle from the ship and back. I think that here you have a jury question. The defendant said the motive matters. You tried to distinguish Bushy. And what's the difference between an intent and turning a valve as the intent of touching somebody? In other words, this is when you're drunk, you may not have the men's ray to commit the actual, even though you're doing an assault. In other words, did he know he was turning the valves? Did he do it intentionally? Or did he know he was driving poorly when he was drunk? People, those are, you know, reckless disregard type of argument. And those are jury questions. And I think that you, in looking at Rogers and Martinez, the two cases, the Rogers case was work-related, and this is, you know, work-related. It may be at the outer limits. But Martinez, they were talking about someone's wife, and that's how it's referenced into Bushy. If somebody gets into a fight regarding comments over his wife, then that is, of course, outside. But in Bushy, I think it's a perfect case here. You don't know what type of behavior. It is going to be. But when somebody does an act that is when he's drunk and turns valves, how do you know that that's intentional? How do you know that, I mean, it has to be intentional because he obviously did something. And this is intentional because he touched somebody. But still they found that there was negligence. So I don't see much difference between Bushy here. And in this case, he touched a person. In the other case, he touched a valve or got behind a car. So there can't be much difference between those. So I think that whatever test you use, that you have to follow Bushy and Tabor, and I hope the Court will be as friendly to the appellant as Judge Friendly was to Mr. Bushy. Right. Thank you. Thank you. The case just argued is submitted. I thank both counsel for your argument today.
judges: Tashima, McKeown, Clifton